Appellant, James L. Spann, appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which adjudicated him to be a delinquent child and which ordered his commitment to the Ohio Department of Youth Services ("ODYS") for institutionalization. Appellant asserts a single assignment of error, as follows:
 The court erred by not complying with Juvenile Rule 29(D), which forbids accepting an admission without addressing an alleged delinquent personally, and determining that the admission is made with an understanding of the consequences of the admission, including rights waived and potential dispositional alternatives.
On September 20, 1997, a complaint was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, charging appellant with being a delinquent child for acts that, if committed by an adult, would constitute aggravated robbery in violation of R.C. 2911.01(A)(3) and felonious assault in violation of R.C. 2903.11(A)(1). The state moved the juvenile court to relinquish jurisdiction of the case and transfer it to the Franklin County Court of Common Pleas, General Division, so that appellant could be tried as an adult.
A probable cause hearing was held on November 6, 1997. Prior to the commencement of testimony, the court granted the state's motion to amend the complaint to add a firearm specification to the aggravated robbery charge. Thereafter, based on the testimony of the alleged victim and another witness, the court found probable cause to believe that appellant committed the offenses charged in the complaint. The court ordered a psychological evaluation of appellant and an investigation into appellant's amenability to rehabilitation within the juvenile system.
The matter came on for an amenability hearing on December 4, 1997. Upon consideration of the results of the investigation and the psychological evaluation, the court determined that it would retain jurisdiction over appellant.
Following a recess, the prosecutor informed the court that a plea agreement had been reached in which the state would dismiss the felonious assault charge in exchange for appellant's admission to the charge of aggravated robbery with a related firearm specification. After a recitation of the facts by the prosecutor, the court first addressed counsel for appellant who indicated his understanding of the agreement. The court then personally addressed appellant as follows:
 THE COURT: * * * Mr. Spann, do you understand that by an admission, this means that you are acknowledging that you committed the offense of aggravated robbery?
JAMES SPANN: Yes, ma'am.
THE COURT: Do you understand that?
JAMES SPANN: Yes.
 THE COURT: Okay. And you understand what aggravated robbery is, and what it is that you are charged with and are prepared to admit to today?
JAMES SPANN: Yes, ma'am.
 THE COURT: And that's been explained to you by your attorney?
JAMES SPANN: Yes.
 THE COURT: All right. Do you understand that if you admit to this charge, that you are waiving your right to have a trial on this charge that you would have in our juvenile court?
JAMES SPANN: Yes.
 THE COURT: And you understand that you are waiving the right that you would have during that trial to question the witnesses that the State might have, and the right to have witnesses testify in your favor?
JAMES SPANN: Yes.
 THE COURT: You also understand that you're waiving the right to have the State prove beyond a reasonable doubt that you committed this offense?
JAMES SPANN: Yes.
 THE COURT: And you're also waiving your right to remain silent, and the right to make an appeal to — to your present case?
JAMES SPANN: Yes.
 THE COURT: Okay. At this time, do you wish to admit or deny the charge of aggravated robbery?
JAMES SPANN: Admit.
 THE COURT: Okay. You're admitting to this. Are you making this admission voluntarily? Is this your choice and your choice alone to admit to this charge?
JAMES SPANN: Yes.
THE COURT: And is anyone making you do this?
JAMES SPANN: No.
 THE COURT: And you understand the possible consequences of your admission to this charge?
JAMES SPANN: Yes.
 THE COURT: Has your attorney explained to you all of the various things that you might know as sentencing or what we call adjudication? What could happen as a result of admitting to this charge, including remaining in one of our institutions for delinquent youth until age 21?
JAMES SPANN: Yes, ma'am.
 THE COURT: You understand the possible consequences?
JAMES SPANN: Yes.
 THE COURT: Okay. Then the Court will accept your admission to aggravated robbery, Ohio Revised Code § 2911.01(A)(3), a felony of the first degree. And also the — I don't know the — there's a three year gun specification that is also included in this. Do you understand what we mean by that?
JAMES SPANN: Yes.
 THE COURT: That the prosecutor has asked that because a gun was used in the commission of this offense, that there will be an additional three years because of the use of a firearm in this offense. You understand that?
JAMES SPANN: Yes. [Tr. 13-15.]
Thereafter, the court accepted appellant's admission to the charge of aggravated robbery with a firearm specification and dismissed the felonious assault charge. On the aggravated robbery charge, the court committed appellant to the legal custody of ODYS for an indefinite term consisting of a minimum period of three years and a maximum period not to exceed appellant's attainment of the age of twenty-one. As to the firearm specification, the court committed appellant to an additional period of three years to be served consecutively with and prior to the term of commitment on the underlying offense. The court further found, pursuant to R.C.2151.355(G)(2), that the adjudication should be considered a conviction for purposes of a determination in the future, pursuant to R.C. Chapter 2929, as to whether appellant is a repeat violent offender as defined in R.C. 2929.01. Appellant was granted leave to file a delayed appeal before this court.
By his assignment of error, appellant raises the issue of whether his admission to the charge of aggravated robbery was made in compliance with Juv.R. 29 and in accordance with his constitutional rights. More specifically, appellant contends that the juvenile court failed to ascertain whether he understood: 1) that he was giving up his constitutional right to compulsory process; 2) that he could not be compelled to be a witness against himself if there were a trial; and 3) the dispositional alternatives he faced, including a minimum term of detention, and the possibility that the adjudication could be the basis for a substantially increased period of imprisonment upon subsequent conviction as an adult. Appellant contends that, by failing to advise him of these constitutional rights and the possible consequences of his admission, the court failed to substantially comply with the requirements of Juv.R. 29.
Juv.R. 29(D) provides, in pertinent part:
 Initial Procedure Upon Entry of an Admission. The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
Juv.R. 29(D) mandates that the juvenile court must make certain determinations prior to accepting a juvenile's admission. Ohio courts have held Juv.R. 29(D) to be analogous to Crim.R. 11(C), which provides that the trial court in an adult criminal proceeding must personally address the defendant before accepting a guilty plea. In re Jenkins (1995), 101 Ohio App.3d 177,179. In accepting an admission from a juvenile, the court is required to personally address the juvenile and conduct an on-the-record discussion to determine whether the admission is being made voluntarily and with an understanding of the nature of the allegations and the possible consequences of the admission. Juv.R. 29(D)(1); In re McKenzie (1995),102 Ohio App.3d 275, 277. The trial court is also obligated to apprise the juvenile of the rights he is waiving by entering the admission, such as the right to challenge the witnesses and evidence against him, to remain silent, and to introduce evidence at the adjudicatory hearing. Juv.R. 29(D)(2); Jenkins,supra, at 180.
"* * * [T]he applicable standard for the trial court's acceptance of an admission is substantial compliance with the provisions of Juv.R. 29(D), without which the adjudication must be reversed 'so that the juvenile may plead anew.' " In reChristopher R. (1995), 101 Ohio App.3d 245, 248, quoting In reMeyer (Jan. 15, 1992), Hamilton App. No. C-910292, unreported. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." In rePalmer (Nov. 21, 1996), Franklin App. No. 96APF03-281, unreported (1996 Opinions 4462, 4466), quoting State v. Nero
(1990), 56 Ohio St.3d 106.
Appellant first argues that his admission is invalid because the trial court failed to expressly advise appellant of his constitutional right to compulsory process, i.e., that he had a right to subpoena witnesses and to compel their attendance at trial and that he could not be compelled to testify against himself at trial. In essence, appellant contends that a juvenile court is required to specifically advise a juvenile defendant of the rights enumerated in Crim.R. 11(C)(2)(c)[1]
before accepting an admission of responsibility in a juvenile proceeding. We disagree.
In In re Harris (1995), 104 Ohio App.3d 324, the Second District Court of Appeals specifically rejected the assertion that "the accepting of an 'admission of responsibility' [in a juvenile proceeding] is so analogous to accepting a guilty plea in [a] felony case that the requirements of Crim.R. 11(C)(2) should apply." Id. at 327. The court noted that while Crim.R. 11 was drafted "in order to satisfy constitutional requirements set forth in several criminal cases in the United States Supreme Court[,] Juv.R. 29(D)(2) appears to have been drafted in order to satisfy due process and fairness requirements for juveniles in juvenile court proceedings." Id. The court also noted that the procedures for accepting admissions in juvenile proceedings differ substantially from the procedures for accepting guilty pleas in adult criminal proceedings. Although we do not agree with the ultimate holding in the Harris case, that is, that the juvenile court's complete failure to advise the juvenile of the rights set forth in Juv.R. 29(D)(2) did not constitute prejudicial error, we do agree that a juvenile court is not required to specifically advise a juvenile defendant of the rights set forth in Crim.R. 11 (C)(2)(c) before accepting an admission of responsibility in a juvenile proceeding.
By its express language, Juv.R. 29(D)(2) requires only that juvenile defendants be advised of their right to "challenge the witnesses and evidence against [them], to remain silent, and to introduce evidence at the adjudicatory hearing." There is no requirement that a court specifically advise juvenile defendants either of their right to subpoena witnesses and to compel their attendance at trial or that they cannot be compelled to testify against themselves at trial.
With regard to the compulsory process issue, an argument similar to the one raised in the instant case was before the court in In re Ibrahim (June 5, 1997), Cuyahoga App. No. 70665, unreported. In that case, the trial court advised the juvenile that by admitting to the charges filed against her, she was giving up her right to a trial, to present evidence on her behalf and to challenge the state's case against her. On appeal, the juvenile asserted that her admission to the charge against her was not in compliance with Crim.R. 11(C) because the trial court failed to inform her that she was giving up her right to compulsory process. The court refused to extend the requirements of Crim.R. 11(C)(2)(c) to proceedings involving admissions made by juveniles; rather, the court found that the trial court was required to comply only with the requirements of Juv.R. 29(D). The court noted that "Crim.R. 1 outlines the scope of the criminal rules and specifically excepts the applicability of these rules in juvenile proceedings. Crim.R. 1(C)(5). In all proceedings within the jurisdiction of the juvenile courts, the juvenile rules apply. Juv.R. 1(A)." Id.
The court ultimately found that the trial court complied with the requirements of Juv.R. 29(D)(2) when it apprised the juvenile that she was relinquishing her right to challenge the state's evidence against her, to remain silent and to introduce evidence at the adjudicatory hearing.
Similarly, in In re Hairston (Aug. 15, 1996), Franklin App. No. 96APF02-123, unreported (1996 Decisions 3234), this court rejected a juvenile defendant's assertion that the trial court failed to comply with the requirements of Juv.R. 29(D)(2) when it accepted the juvenile's admission to a charge of felonious assault without advising him of his right to compulsory process. Hairston differs from the instant case in that the juvenile did not assert that the requirements of Crim.R. 11(C)(2)(c) should apply to juvenile proceedings. However, theHairston court rejected the juvenile's assertion that the court was required to advise him of his right to compulsory process, finding that the court substantially complied with the requirements of Juv.R. 29(D)(2) when it specifically advised the juvenile that there would be " 'no trial, no right to remain silent, no right to question witnesses, no appeal.' "Id. at 3237.
With regard to the self-incrimination issue, we can find no cases where a juvenile has heretofore argued that a trial court's advisement that he has the "right to remain silent" was insufficient to inform him that he could not be compelled to testify against himself at trial. In the context of Juv.R. 29(D)(2), there can be no doubt that the "right to remain silent" refers to the juvenile's Fifth Amendment privilege against self-incrimination. In the instant case, the trial court strictly complied with the requirements of Juv.R. 29(D)(2) by informing appellant that he had a right "to remain silent."
Furthermore, appellant has failed to demonstrate that he was, in any way, prejudiced by the trial court's failure to inform him of his right to compulsory process or the privilege against self-incrimination. There is no showing that appellant would not have entered the admissions had he been informed that he had a right to subpoena witnesses and to compel their attendance at trial and/or that he could not be compelled to testify against himself at trial.
Appellant next argues that the trial court failed to substantially comply with the requirements of Juv.R. 29(D)(1) because the trial court failed to inform him of all available dispositional alternatives prior to accepting his admission. More specifically, appellant argues that the trial court should have informed him of: 1) the minimum term of commitment to ODYS; 2) the additional three-year term of commitment for use of a firearm in the commission of the aggravated robbery; and 3) the possibility that the adjudication could be the basis for a substantially increased term of imprisonment upon subsequent conviction as an adult.
Juv.R. 29(D)(1) requires a trial court to convey the "consequences" of an admission to the juvenile before accepting the admission. In re Hendrickson (1996), 114 Ohio App.3d 290,293. As to his first contention, appellant was clearly informed of the most severe "consequence" of his admission, i.e., that he could be committed to the legal custody of ODYS until he reached the age of twenty-one. Appellant stated that he understood the maximum penalty. Appellant does not argue, and we fail to see, how appellant could possibly have been prejudiced by the court's failure to inform him of the minimum term of commitment to ODYS.
As to appellant's second contention, we find that appellant was fully advised of the possibility that he could be committed to an additional three-year term for use of a firearm before the court finally accepted his admission. Although the court initially accepted appellant's admission without addressing the firearm specification, the court, upon realizing its omission, fully apprised appellant of the possibility that he could be committed to an additional three years for using a firearm in the commission of the aggravated robbery. After appellant indicated that he understood this consequence, the court then accepted appellant's admission.
Lastly, appellant challenges the trial court's failure to advise him, prior to accepting his admission, of the possibility that the adjudication could be the basis for a substantially increased term of imprisonment upon subsequent conviction as an adult.
At the dispositional phase of the hearing, in the presence of both appellant and his attorney, the prosecutor requested that appellant be given the maximum possible sentence,i.e., commitment to ODYS until he attained the age of twenty-one. In addition, the prosecutor requested that if the court committed appellant to ODYS, the court make a specific finding, pursuant to R.C. 2151.355(G)(2), that the adjudication should be considered a conviction for purposes of a determination in the future, pursuant to R.C. Chapter 2929, as to whether appellant is a repeat violent offender as defined in R.C. 2929.01. Appellant's counsel did not object to the prosecutor's request, nor did appellant request to withdraw his admission. The court orally indicated that it would certify that the adjudication should be considered a conviction for the purposes of a future determination that appellant is a repeat violent offender. The court ultimately included the finding in its order of disposition.
Because the finding was included in the court's order of disposition, a repeat violent offender specification could thus be added to certain future felony indictments and, upon conviction, appellant could receive up to ten additional years of imprisonment. See R.C. 2929.01(EE)(2)(b); 2941.194; 2929.14(D)(2). Appellant argues that his admission was infirm because he was not advised prior to entering the admission that the delinquency adjudication could serve to enhance penalties in future convictions.
We can find no cases in which a juvenile has contended that an admission made without being informed that the adjudication of delinquency could serve to enhance penalties in future convictions violates Juv.R. 29(D)(1). However, a similar issue has been raised in the context of criminal proceedings in which an adult enters a guilty plea pursuant to Crim.R. 11(C) and is not advised, prior to entering the plea, that the conviction could serve to enhance penalties in future convictions. InState v. Porter (1976), 49 Ohio App.2d 227, 230, the Ninth District Court of Appeals held that: "* * * Nothing in * * * the Criminal Rules, or subsequent cases makes the voluntariness of a guilty plea dependent upon informing a defendant of possible subsequent criminal liability under a repeat offender statute. * * *" This court addressed a similar issue in Statev. Southers (Aug. 30, 1988), Franklin App. No. 88AP-528, unreported (1988 Opinions 3091, 3093), and stated:
 A plea's possible enhancing effects on any subsequent sentence have been held to be collateral consequences of the conviction and therefore, are not the type of consequences about which a defendant must be advised before defendant enters a guilty plea.
See, also, State v. Graham (Mar. 13, 1997), Franklin App. No. 96APA08-1041, unreported (1997 Opinions 825).
We find no reason not to apply these cases to an identical challenge made in the context of a juvenile proceeding. Therefore, we hold that a juvenile admission's possible enhancing effect on a future sentence is a collateral consequence of the adjudication and is not the type of Juv.R. 29(D)(1) "consequence" about which a juvenile must be advised prior to entering an admission.
Moreover, appellant has failed to demonstrate that he would not have entered the admission had he been advised, prior to entering the admission, that the adjudication could be the basis for a penalty enhancement in future convictions.
Upon consideration of the entire record of proceedings, we find that the trial court addressed appellant personally in a manner that could provide the basis for a determination that he was making his admissions "voluntarily with understanding of the nature of the allegations and the consequences of the admission," and that he understood that by entering his admission he was waiving his right "to challenge the witnesses and evidence against [him], to remain silent, and to introduce evidence at the adjudicatory hearing." Juv.R. 29(D) (1) and (2). Accordingly, the trial court substantially complied with the requirements of Juv.R. 29(D) in this case, and appellant's assignment of error is overruled.
Having overruled appellant's assignment of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
BRYANT and KENNEDY, JJ., concur
[1] Crim.R. 11(C)(2)(c) provides, in pertinent part:
(C) Pleas of Guilty and No Contest in Felony Cases.
* * *
 (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
* * *
 (c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.